UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
STOKER OLUKOTON WILLIAMS,

                     Plaintiff,

   -against-

DR. VINCENT GERACI and OFFICER
ROBERT "BOB" KOCH,

                   Defendants.
--------------------------------------------------------x

**MEMORANDUM AND ORDER**
14-CV-5742 (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

By way of Complaint filed on September 26, 2014, Plaintiff Stoker Olukotun Williams ("Plaintiff" or "Williams") commenced this action, *pro se*, asserting civil rights violations under 42 U.S.C. § 1983 ("Section 1983") against various individuals and entities for deliberate indifference to medical needs.[1]  *See* Complaint ("Compl."), Docket Entry ("DE") [1].  On June 29, 2015, Williams filed an Amended Complaint, ("Am. Compl."), DE [44], and on June 28, 2016, he filed a Second Amended Complaint ("Sec. Am. Compl."), DE [123].  Following the Court's rulings on a partial motion to dismiss filed on June 29, 2016, *see* Memorandum & Order granting DE [122] Motion to Dismiss, dated January 10, 2017, DE [142], and a motion for summary judgment filed on August 26, 2016, *see* Memorandum and Order granting in part and denying in part DE [127] Motion for Summary Judgment, dated January 31, 2017, ("Summary Judgment Mem. & Order" or "Summary Judgment Memorandum and Order"), DE

---

[1] This action is proceeding before this Court for all purposes pursuant to the parties' consent.  *See* DE [206]; 28 U.S.C. § 636.

[145], Plaintiff's remaining claims are his Section 1983 cause of action against Defendant Dr. Vincent Geraci ("Geraci") for failing to provide medical treatment between June 2014 and April 2016, and his state law claim against Officer Robert "Bob" Koch ("Koch") for intentional infliction of emotional distress. *See* Summary Judgment Mem. & Order, 26, 41.

Presently before the Court are the parties' motions *in limine*, filed on December 9, 2019, which include a Memorandum of Law in Support of Plaintiff's Motion *in Limine*, ("Pl. Mem.") DE [215-1], and a Memorandum of Law in Support of Plaintiff's Motion *in Limine* Requesting Adverse Inference ("Pl. Adverse Inference Mem."), DE [215-2], Defendants' December 9, 2019 Letter Motion *in Limine* ("Def. Ltr. Motion"), DE [214], and Defendants' August 5, 2020 Memorandum of Law in Opposition to Plaintiff's Motion *in Limine* ("Def. Opp."), DE [230].[2]  At the outset, the Court notes that none of the motions *in limine* or the opposition includes any exhibits, and citations to specific parts of the record or elsewhere are sparse.  In Williams's motion *in limine*, he seeks to bar Defendants from offering or eliciting evidence at the trial of:  (i) his criminal history; (ii) his alleged use of prostitutes pre-incarceration; (iii) his entry into incarceration with a gunshot wound and bullet fragments in his arm; (iv) his prison disciplinary history, with the exception of events that are directly related to the claims in this action; (v) his mental health history; (vi) the reasons Plaintiff was housed in the observation bay at Riverhead Correctional Facility; and (vii) his

---

[2] Plaintiff was represented when he filed his motions *in limine*, but no longer has counsel.  *See* Electronic ORDER granting DE [219] Motion to Withdraw as Attorney, dated June 11, 2020.

other civil lawsuits and civilian complaints.  Pl. Mem. at 1.  In addition, Plaintiff requests:  (viii) that he be allowed to appear in front of the jury unshackled and in regular clothes with a belt, and (ix) that Defendants be prohibited from appearing in front of the jury in uniform.  *Id.*  In his motion requesting an adverse inference, Williams requests that Defendants be precluded from offering into evidence or eliciting any testimony related to video footage from the Riverhead Correctional Facility, where he was housed during the relevant time period, and an adverse inference instruction regarding Defendants' spoliation of certain destroyed video footage.  *See* Pl. Adverse Inference Mem. at 2.

In opposition, Defendants state that they do not object to Plaintiff's requests regarding:  his alleged use of prostitutes pre-incarceration; grievance and disciplinary history not directly related to his claims; and that he was housed in the observation bay at Riverhead Correctional Facility due to gang affiliation.  Def. Opp. at 2.  Further, Defendants do not oppose Plaintiff's request to appear in plain clothes, and state that they take no position on the cuff and shackle request but defer to the guidance from the US Marshal on courtroom safety.  *Id.* at 2-3.  Finally, Defendants assert that they will be appearing in traditional dress business clothing.  *Id.*  Thus, these portions of Plaintiff's motion are granted on consent with the understanding that any concerns expressed by the US Marshal will be dealt with if and when they are raised.

Accordingly, the Court will address the parties' motions as they relate to Plaintiff's:  (i) criminal history; (ii) entry into incarceration with a gunshot wound and

bullet fragments in his arm; (iii) mental health history; (iv) other civil lawsuits and civilian complaints; and (v) request for preclusion of video footage and an adverse inference. Finally, the Court will turn to Defendants' unopposed motion *in limine*, which seeks to preclude Plaintiff from introducing evidence regarding a prior Section 1983 Civil Rights case against Geraci. *See generally* Def. Ltr. Motion.

For the reasons set forth herein, Plaintiff's motions are granted in part and denied in part, and Defendants' motion is granted.

## I.   BACKGROUND

When Williams filed the original complaint, he was housed in Suffolk County Correctional Facility located in Riverhead, New York.[3] *See* Compl. at 5. Geraci is the Director of the Medical Unit at the Suffolk County Jail in Riverhead, s*ee* Affidavit, DE [127-14], Exhibit ("Ex.") H to First Motion for Summary Judgment, ¶1, and Koch is a Corrections Officer there, *see* Defendants' Rule 56.1 Statement ("Defs.' 56.1 Stmt."), DE [112-1], ¶35. Plaintiff is currently incarcerated in Shawangunk Correctional Facility in Wallkill, *see* Reply in Opposition to Plaintiff's Motion to Compel and Status of Production of Video Footage, DE [168], at 1,[4] where he is serving a sentence of life without parole plus 155 years for December 7, 2016 convictions for Murder in the First Degree, Robbery in the First Degree, Criminal

---

[3] Plaintiff refers to the facility as "Riverhead Correctional Facility" in his moving papers, whereas Defendants refer to it as "Suffolk County Jail." *See generally* Pl. Mem; Def. Opp.

[4] Many of the documents referenced in this opinion do not contain their own consistent pagination. Citations to these documents are to the page numbers as the appear on the Court's electronic filing system.

Use of a Firearm in the First Degree, and Attempted Murder in the Second Degree. *See* Def. Opp. at 3.

### A. **Plaintiff's Claims**

The following description of Plaintiff's allegations concerning his remaining claims are taken from his Second Amended Complaint and from the Summary Judgment Memorandum and Order, and are provided for context purposes only.

Williams alleges that Geraci was deliberately indifferent to his medical needs while incarcerated by failing to provide medical treatment for back pain between June 20, 2014, and April 22, 2016. *See* Sec. Am. Compl. at 18-21, 29. In ruling on Defendants' summary judgment motion, the Court concluded that "Plaintiff's allegations of chronic pain combined with his positive diagnosis of spinal lipomatosis raises issues of fact as to whether he has suffered an objectively serious deprivation of adequate medical care," and "whether Dr. Geraci acted with a sufficiently culpable state of mind," based on, *inter alia*, Williams's allegations of filing numerous medical "chits" that were ignored and a note he wrote and grievance he filed related to these issues, such that a trial is appropriate. *See* Summary Judgment Mem. & Order at 22-26.

Further, Plaintiff maintains a claim against Koch for intentional infliction of emotional distress based on various alleged statements and conduct, including that Koch told him that he wants to "execute [him] with his pistol," wrote down the addresses of Plaintiff's loved ones and told him "you can't protect them from here," Sec. Am. Compl. at 25, 34, and that between September 2013 and June 2014, Koch

5

"berated [him] daily," telling him that (1) "he would love to volunteer for [Plaintiff's] firing squad," (2) "he [wa]s going to bring in his pistol and shoot [Plaintiff] in [his] head if his condition worsens," and (3) "in Texas, they would have executed [you] already." *Id*. at 34. Williams asserts that Koch was aware that gangs had a "hit" on his life and told him that "gang members [we]re going to have [Plaintiff] on [his] knees sucking dick all day . . . [and] they [we]re going to make [Plaintiff] their bitch." *Id*. at 35. Further, Williams alleges that Koch told him that he "should hang [him]self after 3AM." *Id*. at 36. Plaintiff claims that he has suffered from nightmares and emotional distress as a result of Koch's alleged behavior. *Id*.

## B. <u>Procedural History</u>

Given that this case commenced six years ago, there is a lengthy procedural history. Below is an overview of the events that took place for context purposes.

### i. *Discovery, proposed exhibits and evidence*

On May 22, 2015, the Honorable Arlene R. Lindsay, the Magistrate Judge originally assigned to this case, issued a scheduling order requiring that, prior to discovery, (1) Plaintiff prepare a written narrative statement of the facts he currently anticipates presenting at trial through the testimony of witnesses or documentary evidence, and to file it and send it to Defendants by July 3, 2015 and (2) each defendant serve and file a written narrative of the facts they anticipate presenting at trial through the testimony of witnesses or documentary evidence, including a list of all exhibits they intend to offer, the names and addresses of all witnesses they intend to call, and a summary of each anticipated witness's testimony by August 14, 2015.

*See* Scheduling Order, DE [34].  Next, the scheduling order required the parties to initiate discovery, which was to be completed by November 23, 2015.  *Id.*  Further, it required that by December 14, 2015, Williams was to submit a revised narrative statement, exhibit list, witness list, and summary of each witness's testimony.  *Id.*  The scheduling order stated that this was expected to be the final written presentation and "will accurately reflect the facts which plaintiff will establish at trial and accurately recite all exhibits plaintiff will introduce and all witnesses [he] will call, including the substance of each witness's testimony."  *Id.*  It further stated that "[a]ny evidence not fully and accurately disclosed in this final pretrial narrative statement and list of documents and witnesses will be excluded at the trial," and that there would only be an exception to prevent manifest injustice.  *Id.*  Finally, the order required Defendants to submit the pretrial order by January 18, 2016.  *Id.*

On February 18, 2016, after Defendants requested and were granted an extension, *see* ORDER re DE [93], dated January 29, 2016, a proposed joint pretrial order was filed ("Proposed Pretrial Order"), *see* DE [101], along with an addendum on February 19, 2016.  *See* DE [102].  On February 19, 2016, the Honorable Arlene R. Lindsay approved the Proposed Pretrial Order.  *See* ORDER re DEs [101] [102], dated February 19, 2016.

In the Proposed Pretrial Order, Plaintiff's proposed list of exhibits include:

1. Medical records;

2. Minutes of writ court hearings;

3. Video footage;

4.  Grievances;

5.  Observation reports;

6.  Paper work from County attorney;

7.   Inmate handbook;

8.  Cases related to Suffolk Jail; and

9.  Newspaper article 12-5-15.

*See* Proposed Pretrial Order, 8.

Further, Defendants' proposed list of exhibits is comprised of:

a.) Plaintiff's Suffolk County Jail records;

b.) Plaintiff's Jail medical records;

c.) Jail Observation Reports of Plaintiff;

d.) Plaintiff's records from Peconic Bay Medical Center;

e.) Incident report relating to June 18, 2014 incident;

f.) Minutes from Writ proceedings in State Supreme Court;

g.) Video footage of plaintiff; and

h.) Plaintiff's Suffolk County Jail Mental Health Records Summons "and complaint and amended complaint filed by plaintiff along with any other legal documents drafted by the plaintiff which pertain to the allegations he purportedly sets forth in this complaint."

*Id.* at 9.

The Court is unaware of any subsequent pretrial order, proposed or otherwise.

The Proposed Pretrial Order was filed after Plaintiff's Amended Complaint, but before Plaintiff's Second Amended Complaint. *See* Am. Compl.; Sec. Am. Compl.  It was also filed prior to the Summary Judgment Memorandum and Order.  However, a claim against Geraci for deliberate indifference to medical needs was contained in all versions of the Complaint, *see* Compl.; Am. Compl; Sec. Am. Compl., and a claim against Koch for intentional infliction of emotional distress was set forth in both the Amended Complaint and the Second Amended Complaint.  *See* Am. Compl; Sec. Am. Compl.

Further, Defendants filed the following exhibits with their motion for summary judgment:

1. Plaintiff's Suffolk County Jail Medical Records to June 23, 2015;

2. Deposition Excerpts of Stoker Williams;

3. Observation Reports for Stoker Williams;

4. Interrogatory responses of Dr. Vincent Geraci;

5. Suffolk Jail Grievance R-2015-043;

6. Suffolk Jail Grievance R-2015-151;

7. Plaintiff's Suffolk County Jail Medical Records July 2015 to Present;

8. Affidavit of Dr. Vincent Geraci dated August 26, 2016;

9. Affidavit of Deputy Sheriff Allen Shapiro dated August 19, 2016;

10. Affidavit of Deputy Sheriff Douglas Mehrman dated August 19, 2016;

11. Suffolk County Sheriff's Sergeant Assignment Sheet; and

12. Suffolk County Jail Inmate Handbook.

*See* Declaration in Support of the Defendants' Rule 56 Motion, DE [127-4].

Moreover, Williams included exhibits with his Rule 56.1 Counterstatement, ("Pl.'s 56.1 Counterstmt."), DE [112-2], as well as his Response to Motion Re: DE [127] First Motion for Summary Judgment, DE [131], which the Court construed as a Supplemental Rule 56.1 Counterstatement ("Pl.'s Suppl. 56.1 Counterstmt.") in response to Defendants' Supplemental Rule 56.1 Statement filed with their summary judgment motion. *See* Summary Judgment Mem. & Order, 2, n.1. Plaintiff included an exhibit list with his Supplemental Rule 56.1 Counterstatement, which contains, as Williams describes: (1) a response to a grievance he filed, (2) a grievance he filed about a trip to the hospital, (3) a court order forcing the jail to allow him to use a wheelchair, (4) a blank medical grievance, (5) a blank medical chit, (6) an article about the jail's medical unit, (7) a lawsuit filed against the jail's medical unit, (8) the court transcript from a Habeas Corpus hearing seeking medical care, (9) observation reports, (10) a record of medical forms he gave nurses,[5] (11) court transcripts from a Habeas Corpus hearing, (12) an answer to a grievance he put in about his 23-hour lockdown status, (13) an article about sciatica, herniated discs, and how to diagnose and treat spinal conditions, (14) pages from the inmate handbook about requesting medical care, (15) his medical records, (16) grievances, letters to internal affairs seeking video footage, (17) a letter to the warden, (18) exhibits "related to video," (19) questions Nurse Webster answered, and (20) a chapter from a book called "A Jailhouse Lawyer's Manual." *See* DEs[131-2], [131-4], [131-5]. As set forth above,

---

[5] This appears to be a list written by Williams of dates, times, and the contents of medical grievances and chits. It is not clear when this list was made.

there were also various exhibits filed with Plaintiff's Rule 56.1 Counterstatement, many of which match those included with the Supplemental 56.1 Supplemental Counterstatement.  The record does not indicate that additional discovery took place following the Proposed Pretrial Order, other than limited expert discovery discussed below.

Further, throughout this litigation, Plaintiff made numerous attempts to obtain video footage for a time frame beginning in early 2014 from Defendants for his housing area in the jail, *see* DEs [17], [33], & [49], but was ultimately able to view video footage only from select dates in 2015.  *See* ORDER re DE [49], dated September 8, 2015, DE [56].

### ii.     Pretrial Events

On July 19, 2018, a pretrial conference was held, and a trial was set for December 17, 2018.  *See* Minute Order for Pretrial Conference, DE [160].

Following a series of changes to the trial date, *see, e.g.*, DE [169], Electronic Order dated January 16, 2019, DE [183], Electronic Order dated February 19, 2019, Electronic Notice of Hearing (Date Change) dated May 31, 2019, the trial was scheduled for December 16, 2019.

At an October 25, 2019 status conference, the parties consented to the case being reassigned to this Court.  *See* DE [195].  On November 4, 2019, Plaintiff was appointed counsel, who for reasons irrelevant to the present motion, no longer represents him.  There were two more status conferences on November 6, 2019, DE [201], and November 20, 2019, DE [203].  At the November 20, 2019 conference,

11

Plaintiff made an oral motion to take the deposition of a treating physician, which was granted.  *Id.*

On December 6, 2019, Plaintiff requested an adjournment of the trial in order to conduct expert discovery.  *See* DE [210].

On December 9, 2019, both parties filed proposed jury instructions, *see* DEs [211], [212], and Williams filed a proposed voir dire, *see* DE [213].

On December 10, 2019, Williams's motion to adjourn the trial date and conduct expert discovery was granted.  *See* Electronic ORDER granting DE [210] Motion to Continue.  In the electronic order, the Court directed the parties to meet and confer for the purposes of drafting a proposed amended scheduling order for expert discovery with two sets of trial dates, to be filed on or before January 6, 2020.  *Id.*

On December 23, 2019, the parties filed a joint letter with their proposed expert discovery schedule and requested to revisit trial dates in April 2020.  DE [217].  No trial date was ultimately selected, and it's unclear from the record if expert discovery was conducted or completed.

## II.   LEGAL STANDARDS

### A.  <u>Motion *in Limine*</u>

 "The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."  *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing *Luce v. United States*, 469 U.S. 38, 40 n.2 105 S. Ct. 460, 463 n.2 (1984)).  Evidence should only be excluded if it is inadmissible on all potential grounds.  *See Porter v. Home Depot*

*U.S.A., Inc.*, No. 12-cv-4595, 2015 WL 128017, at *2 (E.D.N.Y. Jan. 8, 2015); *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001).   Courts considering a motion *in limine* may reserve decision until trial in order to place the motion in the appropriate factual context.  *Jean-Laurent*, 840 F. Supp. 2d at 536; *see Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996).  The court's ruling is also "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]."  *Luce*, 469 U.S. at 41, 105 S. Ct. at 463.

Evidence must be relevant in order to be admissible at trial.  Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  The standard is "very low." *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quoting *United v. Al-Moavad*, 545 F.3d 139, 176 (2d Cir. 2008)).  All relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise.  Fed. R. Evid. 402; *see White*, 692 F.3d at 246.

### B. <u>Plaintiff's Claims</u>

#### i.   *Deliberate Indifference to Medical Needs*

The Second Circuit has two requirements for Plaintiff to establish deliberate indifference to medical needs.  The first requirement, which is objective, asks whether "the alleged deprivation of adequate medical care" is "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (internal quotations marks and citations omitted).  This inquiry has two components:  whether the Plaintiff was

"actually deprived of adequate medical care," and "whether the inadequacy in medical care is sufficiently serious."  *Id.* at 279-80 (internal quotations marks and citations omitted).  The second requirement is subjective, and requires that the charged official "acted with a sufficiently culpable state of mind."  *Id.* (internal citation omitted).

### ii.    *Intentional Infliction of Emotional Distress*

In New York State, a claim for intentional infliction of emotional distress "requires a showing of: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (citing *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993)).

## III. DISCUSSION

### A. <u>Plaintiff's Motions</u>

#### i.  *Plaintiff's Criminal History*

As part of his motions, which Defendants oppose, Williams seeks to preclude Defendants from eliciting or introducing any evidence or testimony regarding his criminal history, including the length of his sentence and the underlying circumstances surrounding his arrest and prosecution leading to his incarceration. Pl. Mem. at 2.

##### a.  <u>Rule 609(a)(1)</u>

Defendants seek to admit Plaintiff's prior convictions for impeachment purposes under Rule 609(a)(1), *See* Def. Opp. at 3.  Specifically, Defendants request

to admit the nature of the charges, the level of convictions, and the ultimate sentence. *See id.*  Plaintiff argues that the unduly prejudicial effect of this evidence outweighs the probative value under Rule 403, and therefore exclusion is appropriate.  Pl. Mem. at 4-8.

### 1. Legal Standards

Fed. R. Evid. 609(a) provides, for convictions less than ten years old, that when attacking a witness's character for truthfulness by evidence of a criminal conviction, "for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence . . . must be admitted, subject to Rule 403,  in a civil case . . ." Fed. R. Evid. 609 (a)(1)(A).  Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403; *see United States v. Estrada*, 430 F.3d 606, 620-21 (2d Cir. 2005) (setting forth the standard).  Further, "[i]n balancing the probative value against prejudicial effect under [Rule 609(a)(1)], courts examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness.*" Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997) (citing *United States. v. Hayes*, 553 F.2d 820, 828 (2d Cir. 1977)) (other citation omitted).   "Although all of these factors are relevant, '[p]rime among them is [the first factor, i.e.,] whether the crime, by its nature, is probative of a lack

of veracity.' " *United States v. Brown*, 606 F. Supp. 2d 306, 312 (E.D.N.Y. 2009) (quoting *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977)).   " '[C]rimes of violence and assaultive behavior have limited probative value concerning a witness's credibility.' " *Dougherty v. Cty. of Suffolk*, No. 13-cv-6493, 2018 WL 1902336, at *4 (E.D.N.Y. Apr. 20, 2018) (quoting *Celestin v. Premo*, No. 12-CV-301, 2015 WL 5089687, at *2 (N.D.N.Y. Aug. 27, 2015)).   In addition, "[t]he second factor, remoteness, is measured from the date of trial, and more recent convictions are deemed to be more probative than older convictions." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 544 (E.D.N.Y. 2011) (citing *Stephen v. Hanley*, No. 03-cv-6226, 2009 WL 1471180, at *4 (E.D.N.Y. May 21, 2009)).   Further, the third factor "deals with the similarity of the charged crimes, or the incident at issue in the pending case, to the conviction.   The less similar the pending case to the prior conviction, the less prejudicial its admission is." *Hanley,* 2009 WL 1471180 at *5 (citing *United States. v. Hayes,* 553 F.2d 820, 828 (2d Cir. 1977)).   Last, "where the credibility of a given witness is particularly important because there is little other documentary or supporting evidence and 'success at trial probably hinges entirely on [the witness's] credibility with the jury,' the fourth factor weighs in favor of admission of the prior conviction." *Jean-Laurent*, 840 F. Supp. 2d at 544 (citing *Jones v. City of New York*, No. 98-cv-6493, 2002 WL 207008, at *3 (S.D.N.Y. Feb. 11, 2002)).

2.   Application

i.   Impeachment Value of Prior Crimes

For all four convictions, the first factor weighs against admission.  As set forth above, crimes of violence, such as those at issue here, have limited probative value concerning credibility.  *See United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002) ("Murder generally is not a crime of dishonesty . . . "); *Dougherty*, 2018 WL 1902336 at *4 (E.D.N.Y. Apr. 20, 2018) (finding that robberies are "crimes of violence with little if any bearing on credibility"); *Espinosa v. McCabe*, No. 10-cv-497, 2014 WL 988832, at *1, 4 (N.D.N.Y. Mar. 12, 2014) (finding that the impeachment value of prior convictions weighs against admission for a plaintiff's felony convictions, which included Attempted Murder in the Second Degree and Criminal Use of a Firearm in the First Degree).

ii.  <u>Remoteness</u>

As set forth above, remoteness is calculated from the date of trial.  Given that at trial date has not been set in this matter, the Court is unable to fully consider this factor.   However, the Court notes that this factor will likely favor admission, as at this time, the conviction is not even four years old.  *See Jean-Laurent*, 840 F. Supp. 2d at 544 (finding the remoteness factor favors admission where the conviction is six years old, "well within the ten-year limit imposed by Rule 609").

iii.  <u>Similarity Between the Past Crimes and Conduct at Issue</u>

Plaintiff's claims of deliberate indifference to medical needs and intentional infliction of emotional distress bear no similarities to the convictions.  Thus, the Court finds that this factor weighs in favor of admission.

        iv. <u>Importance of the Credibility of the Witness</u>

  The Court also finds that credibility of the witness weighs in favor of admission.  Although Plaintiff does plan to point to documentary evidence in this matter, *see* Proposed Pretrial Order, for the intentional infliction of emotional distress claim in particular, which is supported by statements Koch allegedly made to Williams, the Court expects that Plaintiff's credibility will be a key factor in assessing this claim.[6]

        3. <u>Conclusion</u>

  Although the Court finds that the third and fourth factors, and potentially the second factor, favor admission, the probative value of the convictions is substantially outweighed by the unfair prejudice that Williams may face under Rule 403 by allowing admission of his convictions.  *See, e.g.*, *Zulu v. Barnhart*, No. 16-cv-1408, 2019 WL 3239397, at \*2 (N.D.N.Y. July 18, 2019) (citing *United States v. Agostini*, 280 F. Supp. 2d 260, 262 (S.D.N.Y. 2003)) (finding that a plaintiff's prior murder conviction is highly prejudicial and could cause the jurors to evaluate his worth as a witness based on that conviction, regardless of its irrelevance to his claim).

  Thus, the Court will allow admission of the fact that Williams was convicted of four felonies, when he was convicted, and the fact that he is currently incarcerated and serving a sentence, but will not allow admission of which crimes Plaintiff was convicted of, the facts underlying the offenses, or the length of the sentence, other

---

[6] The Court observes that Plaintiff does appear to have filed a written grievance related to his interactions with Koch.  *See* Suffolk Jail Grievance R-2015-151, DE [127-12], Ex. F to First Motion for Summary Judgment.

than to state that the felonies are punishable by a term of imprisonment of more than one year. *See Hines v. Huff*, No. 16-cv-503, 2019 WL 3574246, at *2 (N.D.N.Y. Aug. 6, 2019) (internal citations omitted) (allowing defendants to introduce that a plaintiff was convicted of felonies punishable by a term of imprisonment of more than one year, but not the sentence, stating that "[t]he length of a sentence may bear a relation to the gravity of an offense" and finding that admitting the length of the sentence "creat[es] a danger of unfair prejudice because the jury might infer from its length that Plaintiff committed a serious violent crime, and unfairly decide this case, involving a physical altercation with the officers, based on such an inference"); *see also Olutosin v. Gunsett*, No. 14-CV-00685, 2019 WL 5616889, at *10 (S.D.N.Y. Oct. 31, 2019) (allowing the defendants "to cross-examine the plaintiff about the fact that he is a convicted felon serving an indeterminate sentence greater than 25 years" but precluding defendants from "offer[ing] evidence regarding the specific offenses charged, the actual length of the sentence, or the underlying details of the offense").

Accordingly, Plaintiff's motion to preclude which crimes Plaintiff was convicted of, the underlying details of the convictions, and the length of the sentence is granted.

### b. Rule 608(b)(1)

In addition to seeking to admit Plaintiff's prior convictions under Rule 609, Defendants seek to cross-examine Williams about the events leading to his arrest and conviction, namely, that he was convicted for September 7, 2013 conduct where he robbed someone at gunpoint, murdered her by shooting her in the head, engaged in a shootout with the police during which he was shot in the arm, and ran from the scene

and tried to evade capture by hiding in the woods, under Rule 608(b)(1). *See* Def. Opp. at 4. Defendants argue that the facts underlying Plaintiff's conviction should be admissible to impeach his credibility and show his lack of truthfulness because they contrast with statements he made elsewhere, specifically, invoking his Fifth Amendment privilege during his deposition, but at his criminal trial, telling the jury that he did not commit the crime, but it was one of his other personalities named Malik. *Id.* Defendants argue that Plaintiff claims that he suffers from schizophrenia and has been diagnosed with that condition, but that during the police interrogation, he did not mention any other personalities, including Malik. *Id.*

### 1. Legal Standard

Rule 608(b) provides in relevant part that: "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608(b)(1). The admissibility of evidence under Rule 608(b) "is subject to the probative-prejudice balancing test in Rule 403." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 552 (citing *United States v. Schwab*, 886 F.2d 509, 513 (2d Cir.1989)).

### 2. Application

The Court concludes that Williams telling the jury in his criminal trial that he did not commit the crime, but then stating that another one of his personalities named Malik did, while failing to mention multiple personalities during the police

interrogation following his arrest, is relevant to truthfulness, and thus may be explored on cross-examination.  However, the Court finds that the probative value of the facts underlying Plaintiff's arrest, which point to his involvement in violent crimes, is outweighed by the potential to unduly prejudice the jury against Plaintiff.

### 3. Conclusion

Accordingly, the facts underlying Williams's conviction are inadmissible, but pursuant to Rule 608(b), on cross-examination, Plaintiff's statements at his criminal trial regarding multiple personalities, and the fact that he did not mention another personality in the police interrogation following his arrest, may be addressed.

In reaching this conclusion, the Court notes three arguments made by Defendants.  Defendants assert that the facts underlying Plaintiff's arrest and conviction should be admissible to attack his credibility because the physical activity of running in the woods and evading capture belie his claim that he had a back condition requiring medical attention when he entered the jail.  Def. Opp. at 4-5. Moreover, these events may have caused Plaintiff distress or emotional trauma and are thus probative on the issue of damages.  *Id.* at 5.  Finally, Defendants appear to argue that the events leading to the conviction, which include that he robbed his victim at gunpoint and thereafter murdered her by shooting her in the head, followed by a shootout with the police in which he was shot in the arm, ran from the scene, and hid in the woods to avoid capture, should be admissible because these facts may have also caused him emotional distress.  While the Court acknowledges that there is some relevance to this evidence for the reasons Defendants argue, ultimately, the

probative value is outweighed by the unduly prejudicial impact it may have on the jury's deliberations.[7]

Accordingly, Plaintiff's motion regarding his criminal history is granted. Defendants, however, may cross-examine Plaintiff regarding his comments about an alternate personality, and failing to mention this during a police interrogation.

### ii.    *Plaintiff's Gunshot Wound*

Williams asserts that during his deposition, Defendants tried to elicit testimony from him about a gunshot wound he had at the time of his arrest.  Pl. Mem. at 9.  He argues that the fact that he entered the prison system with a gunshot wound, and that he currently has bullet fragments in his arm, should be precluded under Rules 401-404 as irrelevant, prejudicial, and improper character evidence.  *Id.*

For the reasons set forth below, the Court deems the fact that the Plaintiff entered jail with a gunshot wound inadmissible.  As a result, Plaintiff's motion is granted in this respect.

### a.  <u>Legal Standards</u>

"[Fed. R. Evid. 402] requires that evidence be relevant to be admissible," which "is defined as evidence 'having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529,

---

[7] Regarding the back injury, Defendants have put forth that they have other evidence relating to Plaintiff's physical activity while incarcerated, including that he played basketball two to three times a week since entry into jail in September 2013, *see* Defs.'  56.1 Stmt., ¶5, which Williams does not dispute, *see* Pl.'s 56.1 Counterstmt., ¶5, and is not addressed in the parties' motions.

536 (E.D.N.Y. 2011) (quoting Fed. R. Evid. 401).  Thus, "the court's determination of what constitutes 'relevant evidence' is guided by the nature of the claims and defenses in the cause of action."  *Id.*

Further, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Nevertheless, "this evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Finally, as set forth above, under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "In making a Rule 403 determination, courts should ask whether the evidence's proper value 'is more than matched by [the possibility] . . . that it will divert the jury from the facts which should control their verdict.' "  *Jean-Laurent*, 840 F. Supp. 2d at 537 (quoting *Bensen v. Am. Ultramar, Ltd.*, No. 92-cv-4420, 1996 WL 422262, at *6 (S.D.N.Y. July 29, 1996)).

### b. <u>Application</u>

Based on Defendants' argument that the fact that Plaintiff entered jail with a gunshot wound "is probative on the issue of the extent of his purported continuing back injury," Def. Opp. at 6,  the Court understands Defendants to be arguing that

this fact is relevant to Williams's Section 1983 claim for deliberate indifference to his medical needs against Geraci.  Thus, the Court considers this evidence pursuant to Rules 402 and 403.

In their opposition, Defendants assert that the gunshot wound is relevant because Williams alleges that he made repeated complaints about his back since he entered the jail, but that his medical records belie this claim.[8]  *Id.*  However, the Court finds that Plaintiff's gunshot wound to his arm when he entered jail in September 2013 is of limited relevance to his claim that between June 20, 2014 and April 22, 2016, Geraci was deliberately indifferent to his medical needs concerning chronic pain in his back.

Further, to the extent the gunshot wound is relevant, this evidence would be unfairly prejudicial under Rule 403.  It appears that the gunshot wound occurred during the events that led to Plaintiff's conviction.  When Williams was admitted to jail, "he had a gunshot wound to his arm caused during the commission of the crime for which he was incarcerated."  *See* Defs' 56.1 Statement, ¶1.  Thus, this could lead the jury to speculate that Plaintiff was convicted of violent crimes, a fact which, as set forth above, the Court deems to be unfairly prejudicial.

---

[8] Here, Plaintiff's motion does not appear to seek preclusion of any particular records— just the fact that he entered jail with the wound.  Further, Defendants have not presented the Court with the specific records they are seeking to include, although the Court notes that there are references to Williams's gunshot wound in various medical records submitted with Defendants' summary judgment motion.  *See generally* DEs [127-6], [127-13], Exs. A, G to First Motion for Summary Judgment.  The Court declines to rule on the admissibility of any records at this time, and its ruling is limited to whether the fact that Plaintiff came to jail with a gunshot wound is admissible.

### c.  Conclusion

Therefore, the Court concludes that evidence that Williams entered jail with a gunshot wound is inadmissible and Plaintiff's motion regarding the gunshot wound is granted.

### iii.    *Plaintiff's Mental Health History*

Williams next seeks to exclude evidence of his mental health history, including his diagnosis of schizophrenia and his mental health treatment while incarcerated on the grounds that it is irrelevant, not probative of any fact of consequence in this litigation, unfairly prejudicial, confusing to the jury, a waste of judicial resources, and improper character evidence.  Pl. Mem. at 10.  Plaintiff's motion in this regard is denied.

### a.  Legal Standards

A witness's psychological history may be admitted as evidence when it goes to credibility.  *United States v. Sasso*, 59 F.3d 341, 347 (2d Cir. 1995) (citing Fed. R. Evid. 611(b)).  Further, "[a] mere history of psychological illness, not probative of the witness's state of mind at the time of the events being recalled, should not be admitted and risks stereotyping people with mental illness as incapable of testifying to events." *Hernandez v. Kelly*, No. 09-cv-1576, 2011 WL 2117611, at *5 (E.D.N.Y. May 27, 2011) (citing *Sasso*, 59 F.3d at 348); *see also Lewis v. Velez*, 149 F.R.D. 474, 484 (S.D.N.Y. 1993) ("A holding that any and all aspects of a witness' psychiatric history are probative of credibility would embrace unwarranted stereotypes of persons who seek mental health treatment.").  In assessing the probative value of the evidence, Courts

consider: (1) "the nature of the psychological problem," (2) "the temporal recency or remoteness of the history," and (3) "whether the witness suffered from the problem at the time of the events to which she is to testify, so that it may have affected her ability to perceive or to recall events or to testify accurately." *Sasso*, 59 F.3d at 347-48 (internal quotation marks and citations omitted). Further, the Court "has discretion to limit such evidence if it determines that the probative value of the evidence is outweighed by its potential for unfair prejudice, confusion of the issues, or waste of time." *Id.* at 348 (citing Fed. R. Evid. 403; *Chnapkova v. Koh*, 985 F.2d 79, 81 (2d Cir. 1993)).

### b. **Application**

Defendants assert that Plaintiff's mental health history is probative of his "credibility and ability to perceive or recall events or to testify truthfully." Def. Opp. at 6. In support of their assertions, Defendants state that there are mental health records, in addition to Williams's "admissions in submissions to the Court," which includes a subsequent lawsuit, "that he has, or at least claims to have, suffered from a mental disorder that causes him to experience delusions that grossly distort his reactions to events." *Id.* at 7.[9] Further, Defendants argue that Plaintiff's mental health history is admissible on the issue of damages in relation to his claim against Koch for intentional infliction of emotional distress. *Id.*

---

[9] This reference appears to be to a lawsuit filed by Plaintiff on December 6, 2016, *see Williams v. Hall et al.*, 16-cv-6830, Docket Sheet (E.D.N.Y.), wherein Plaintiff alleges in a complaint that he's been diagnosed with schizophrenia and a personality disorder, and has another personality. *See Williams v. Hall et al.*, 16-cv-6830, Docket Sheet (E.D.N.Y.), DE [1].

Initially, for the nature of the psychological problem at issue, a diagnosis of schizophrenia weighs in favor of admission.  Here, in Plaintiff's January 28, 2016 deposition transcript, a portion of which Defendants included with their summary judgment motion, Williams stated that he was diagnosed with schizophrenia while incarcerated at Suffolk County Jail.  *See* Deposition Excerpts of Stoker Williams, DE [127-7], Ex. B to First Motion for Summary Judgment, 12-13.  Further, as Defendants assert in their opposition, at his criminal trial Plaintiff testified that another personality, Malik, committed his crimes.  *See* Def. Opp. at 4.  These facts are directly relevant to Williams's credibility at trial.

Next, Plaintiff's statement regarding schizophrenia he made during his January 28, 2016 deposition is sufficiently recent.  *See, e.g.*, *Hernandez v. Kelly*, 09-cv-1576, 2011 WL 2117611, at *5 (E.D.N.Y. May 27, 2011) ("[P]laintiff's diagnosis in 2004 is close enough in time to the underlying event (less than ten years) to be probative, where one can reasonably conclude that plaintiff's condition may have been evident on the day of the incident.")

Finally, whether Plaintiff suffered from the issue during the events to which he will testify, given that his allegations span from September 2013, which is when he entered jail, through at least April 2016, if he was diagnosed with schizophrenia while incarcerated, at least prior to his January 28, 2016 deposition, it was undoubtedly present during at least some of the events to which he will testify.

### c.  <u>Conclusion</u>

27

Here, the fact that Plaintiff claims he was diagnosed with schizophrenia while in jail, which presumably was present during the time period spanning his allegations, coupled with his claim that an alternate personality named Malik committed his crimes, *see* Def. Opp. at 4, the Court finds that Plaintiff's mental health history is admissible on these two issues. *See, e.g.*, *Lewis v. Velez*, 149 F.R.D. 474, 484–85 (S.D.N.Y. 1993) (allowing admission of parts of psychiatric history that describe hallucinations and delusions). Accordingly, Plaintiff's motion to preclude evidence of his psychological history is denied.

### iv.    *Plaintiff's Other Civil Lawsuits or Civilian Complaints*

In his motion, Plaintiff states that "he objects to Defendants introducing any evidence or testimony regarding other lawsuits filed by Plaintiff to show that he has a character trait or propensity for litigiousness and, therefore, lacks credibility." Pl. Mem. at 16. Plaintiff specifically references the lawsuits he commenced in 2015 and 2016 against Suffolk County Medical Examiner Odette Hall, Suffolk County District Attorney Thomas Spota, and Suffolk County.[10]

### a.  <u>Legal Standards</u>

It is improper for a court to admit evidence of prior lawsuits for the purpose of demonstrating that a plaintiff is a "chronic litigant." *See Outley v. City of New York*, 837 F.2d 587, 591-92 (2d Cir. 1988); *Jean-Laurent v. Hennessy*, 840 F.Supp. 2d 529, 542 (E.D.N.Y. 2011). Further, Fed. R. Evid. 404(b) prohibits the admission of evidence of prior acts in order to prove action in conformity with character. Fed. R. Evid.

---

[10] In Defendants' motion, they only seek to introduce a lawsuit filed by Plaintiff in 2016. *See* Def. Opp. at 8. Thus, the court will only address this lawsuit.

404(b); *see also Ragin v. Newburgh Enlarged City School Dist.*, 2011 WL 2183175, at *2 (S.D.N.Y. June 3, 2011). Evidence of prior or subsequent lawsuits can, however, be admitted to "show a possible cause of . . . injury unrelated to the acts of the defendant," *Brewer v. Jones*, 222 Fed. App'x 69, 70 (2d Cir. 2007), or if it is offered for a different purpose under Rule 404(b). Fed. R. Evid. 404(b); *see Outley*, 837 F.2d at 592; *see also Napolitano v. Synthes, Inc.*, No. 09-cv-828, 2014 WL 12868859, at *2 (D. Conn. May 2, 2014). As set forth above, Rule 404(b) requires a two-step analysis: "first, consideration of whether the evidence fits within the exceptions listed in the rule and, second, balancing the probative value of the evidence against the likelihood of undue prejudice, equivalent to the analysis under Rule 403." *Outley*, 837 F.2d at 592 (citing Fed. R. Evid. 404, Notes of Advisory Committee).

### b. <u>Application</u>

Plaintiff's motion to bar introduction of this lawsuit is granted in part and denied in part. In their opposition, Defendants seek to introduce evidence of a subsequent lawsuit brought by Plaintiff to impeach his "credibility and ability to perceive, recall or testify accurately," and because it is probative on this issue of damages for the intentional infliction of emotional distress claim. *See* Def. Opp. at 7-8. Defendants argue that the lawsuit, *see Williams v. Hall et al.*, 16-cv-6830, Docket Sheet (E.D.N.Y.), confirms that Williams suffers from schizophrenia, references a psychotic episode and an alternate personality, and is probative on the issue of damages since in the lawsuit, Plaintiff sues, *inter alia*, the medical examiner from his trial for intentional infliction of emotional distress, claiming she lied when she said

29

the victim was shot in the back of her head.  *Id.*   As a result, the lawsuit is not being introduced to show that he is a chronic litigant, rather, it is being introduced for another purpose, to impeach Williams's credibility and show inconsistency in his statements.  The Court agrees that these portions of the lawsuit concerning Plaintiff's schizophrenia, a psychotic episode, and an alternate personality are admissible.

However, certain allegations made in this lawsuit are inadmissible under Rule 403 as unduly prejudicial.  The complaint in the lawsuit references the fact that Plaintiff shot his victim.  *See Williams v. Hall et al.*, 16-cv-6830, Docket Sheet (E.D.N.Y.), DE [1].  Thus, because certain statements made during the course of this lawsuit are relevant to Plaintiff's intentional infliction of emotional distress claim and his credibility, the Court finds that introducing portions of the lawsuit, in which Plaintiff references that he shot the victim of his crimes, would be inappropriate.

### c.  Conclusion

Accordingly, Plaintiff's motion *in limine* is granted in part only to the extent that statements concerning his criminal history made in the context of this litigation may not be introduced.

### v.   Preclusion of Video Footage and Adverse Inference Instruction

Williams next claims that Defendants destroyed surveillance footage from Riverhead Correctional Facility that likely contained information favorable to his claims.  *See* Pl. Adverse Inference Mem., 2-3.  Based on this conduct, Plaintiff argues that Defendants' spoliation of the video footage warrants an adverse inference

instruction to the jury.  *See id*. at 3, 7-9.  For the reasons set forth below, Plaintiff's motion regarding spoliation and an adverse inference is denied.

### a. Legal Standards

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  *West v. Goodyear Tire & Rubber Co*., 167 F.3d 776, 779 (2d Cir.1999).  It is widely accepted in the Second Circuit that parties should not benefit from spoliation, and a federal district may impose sanctions under Federal Rule of Civil Procedure 37(b) or pursuant to "its inherent power to manage its own affairs" when a party destroys evidence.  *See Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d at 99, 107 (2d Cir. 2002); *see also Zubalake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).

A court will only order an adverse inference instruction if the requesting party can establish "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  *Official Committee of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman et al*, No. 13-cv-5475, 2015 WL 5027899, at *7 (E.D.N.Y. Aug. 25, 2015), *report and recommendation adopted*, No. 13-CV-5475, 2016 WL 128154 (E.D.N.Y. Jan. 12, 2016) (citing *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).

For the duty to preserve, parties are obliged to preserve evidence when the party has notice that the evidence is relevant to litigation. *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998).  This involves two related inquiries: "when does the duty to preserve attach, and what evidence must be preserved?" *Hernandez v. Hacienda Mexicana Corp.,* No. 17-5608, 2018 WL 6427639, at *4 (S.D.N.Y. Dec. 6, 2018) (citing *Zubulake,* 220 F.R.D. 212, 220 (S.D.N.Y. 2003)).  The obligation to preserve arises when "the party has notice that the evidence is relevant to litigation, and . . . this obligation may arise prior to the filing of a suit if the litigation is reasonably anticipated*." Toussie v. Cnty of Suffolk*, No. 01-cv-6716, 2007 WL 4565160, at *6 (E.D.N.Y. Dec. 21, 2007).  Further, "[o]nce the duty to preserve evidence attaches, a party must save any evidence that it 'reasonably should know is relevant' to an anticipated action." *Taylor v. City of New York*, 293 F.R.D. 601, 611 (S.D.N.Y. 2013).  A litigant is under no duty to retain every document in its possession, but it is "under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Haltman*, 2015 WL 5027899, at *7 (citing *Zubalake*, 220 F.R.D. at 217) (internal citations omitted).  This covers documents or tangible things made by those who have discoverable information "that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A).  It can also include documents prepared for those individuals, as well as any information

relevant to the claims or defenses of any other party.  *Id*.; *see also* Fed. R. Civ. P. 26(b)(1).

Moreover, even in instances where a party has breached its obligation to preserve, "sanctions will only be warranted if the party responsible for the loss had a sufficiently culpable state of mind.*" In re WRT Energy Sec. Litig*., 246 F.R.D. 185, 195 (S.D.N.Y. 2007); *see also Kronisch v. U.S.*, 150 F.3d 112, 127 (2d Cir. 1998) ("Once a court has concluded that a party was under an obligation to preserve the evidence that it destroyed, it must then consider whether the evidence was intentionally destroyed, and the likely contents of that evidence."). A party is culpable if it can be shown that the evidence was destroyed "knowingly, even if without intent to breach a duty to preserve it, or negligently." *Residential Funding Corp.*, 306 F.3d at 108. "In the discovery context, negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding." *In re Pfizer Secs. Litig.*, 288 F.R.D. 297, 314 (S.D.N.Y. 2013) (internal quotations omitted). "Once the duty to preserve attached, any destruction [of relevant evidence] is, at a minimum, negligent."  *Taylor*, 293 F.R.D. at 612 (quoting *Slovin*, 2013 WL 840865, at *4).

Finally, "[r]elevance may be assumed where the breaching party acted in bad faith or with gross negligence." *Haltman*, 2015 WL 5027899, at *9 (citing *Neverson-Young v. Blackrock, Inc.*, 09-cv-6716, 2011 WL 3585961, at *2 (S.D.N.Y. Aug. 11, 2011)). However, where the Defendants were merely negligent, Plaintiff must demonstrate not just ordinary relevance, but that the spoliated evidence "would have

been of some 'assistive relevance' and favorable to the moving party's claims or defenses." *Residential Funding*, 306 F.3d at 108-10. The burden is on Plaintiff to show, *via* some extrinsic evidence, that the destroyed surveillance footage would have been favorable to him. *Taylor*, 293 F.R.D. at 613 (quoting *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 122 (S.D.N.Y. 2008)). This burden is counterbalanced by the Court's recognition that too strict of a standard would "allow parties who have destroyed evidence to profit from that destruction." *In re Pfizer*, 288 F.R.D. at 315.

**b. <u>Application</u>**

i. <u>Duty to Preserve</u>

Williams claims that the duty to preserve attached when the Complaint was filed on September 26, 2014. *See* Pl. Adverse Inference Mem. at 4; *see generally* Compl. Defendant argues that it was not served with the Complaint until February 6, 2015, so the obligation would not attach until that date. *See* Def. Opp. at 10. "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation—most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). Here, Defendants were not served with the Complaint until February 6, 2015. Plaintiff has presented no facts demonstrating that Defendants were aware that the video footage was relevant to litigation prior to this date. Thus,

the Court concludes that February 6, 2015 is the date on which Defendants' obligation to preserve the relevant evidence attached.

Moreover, video footage from the Suffolk County jail may be relevant to Plaintiff's claims. As an inmate of the jail at the time his claims allegedly occurred, footage could prove helpful in understanding the facts. Defendants argue that the video camera recording system has only a finite amount of space, and old files are overridden once the server becomes full. *See* Def. Opp. at 9. This is not an excuse for not preserving surveillance footage however; once the Complaint was served on February 6, 2015, Defendants should have gone into the server and preserved as much footage as was maintained on that date. *See, e.g.*, *Taylor v. City of New York*, 293 F.R.D. 601, 611-12 (S.D.N.Y. 2013) (holding that all three hours of surveillance footage of Plaintiff was relevant to the lawsuit, not just the cherry-picked segments that Defendant deemed relevant); *Slovin v. Target Corp.*, No. 12-cv-863, 2013 WL 840865, at *3 (S.D.N.Y. Mar. 7, 2013) (Defendant's duty to preserve required that it save "an unedited version of the footage"). According to Defendants, the servers maintain a minimum of thirty days of footage, and may maintain as much as ninety days of footage. *See* Def. Opp. at 9. Thus, as of February 6, 2015, it is possible that Defendants had the ability to potentially preserve footage for dates 90 days prior, which would include Plaintiff's request for footage from November 25, 2014 and

December 24, 2014.    Defendants were under an obligation to preserve all of this footage, provided it had not been wiped from the servers as of February 6, 2015.[11]

ii.  <u>Culpable State of Mind</u>

Here, the duty to preserve surveillance footage for the dates above attached before it may have been destroyed. *See* III(v)(b)(i), *supra*.  At a minimum, then, Defendants were negligent in allowing the servers to delete footage after February 6, 2015.  *See Taylor*, 293 F.R.D. at 216.  Despite Plaintiff's claim, however, Defendants did not act with gross negligence.  The Second Circuit has rejected any *per se* holdings of negligence based on the failure to institute a litigation hold, and there has been no evidence offered to suggest that Defendants willfully deleted any footage.  *See Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012). Once Defendants received Plaintiff's March 19, 2015 request for video footage, they assert that they made all footage available to the Plaintiff and placed a litigation hold on a month of video footage for Plaintiff's housing area.   *See* Def. Opp. at 10. This demonstrates that, while Defendant's preservation policies in general may be imperfect, and they should have put a litigation hold on the videos by February 6, 2015, the deletion of surveillance footage was simple negligence.  *See Chin*, 685 F.3d at 162 (holding that the failure to instigate a litigation hold is only one factor in determining whether to issue sanctions); *Taylor*, 293 F.R.D. at 613 (finding that Defendants were only negligent despite their "troublingly *ad hoc* video retention and

---

[11] In their opposition, Defendants fail to provide the date on which the videos were wiped from the servers.

36

preservation policies"); *Zubalake*, 220 F.R.D. at 221 (finding that defendant had not been intentionally or grossly negligent).

### iii.  Assistive Relevance

The Court has scoured the record for extrinsic evidence that would demonstrate "assistive relevance" of the deleted footage, as very little was supplied in the parties' moving papers.  In a letter to the Court on October 28, 2015, Plaintiff explained that the footage was relevant because it showed that "nurses took [his] medical grievances [] but for some reason they are not on record."  *See* Letter from Stoker O. Williams to Judge Lindsay dated 10/28/15 Re: Video footage, DE [76], at 1. In Plaintiff's Narrative Statement from December 10, 2015, Plaintiff summarized several incidents in the jail in which he requested treatment from nurses but was denied.  *See generally* Plaintiffs [sic] Narrative Statement from Pro Se Plaintiff Stoker Olukotun Williams dated 12/5/2015, DE [85]. These incidents were likely captured on the jail's surveillance footage.  Unfortunately however, the Court cannot assume the veracity of these claims in the absence of any corroborating evidence. There is no relevant sworn testimony, either from depositions or affidavits, and no other extrinsic evidence that the destroyed surveillance footage would have been favorable to Plaintiff.  Accordingly, the Court finds that Plaintiff has not met his burden of demonstrating that the deleted footage would have assisted his case at trial. *See, e.g., Barnes v. Harling*, 368 F.Supp. 3d 573, 608-09 (W.D.N.Y. 2019) (finding that Plaintiff had failed to demonstrate that video footage would support his claim); *Slater v. Lacapruccia*, No. 13-cv-1079S, 2019 WL 1723515, at *5 (W.D.N.Y.

Apr. 18, 2019) (holding that Plaintiff could not demonstrate that the destroyed audiotape contained information favorable to his case).

### c. **Conclusion**

For the reasons set forth above, Plaintiff's motion that Defendants be precluded from offering into evidence or eliciting any testimony related to video footage from Riverhead Correctional Facility, and that an adverse inference instruction be given, is denied.

### B. **Defendants' Motion**

In Defendants' unopposed letter motion, they seek to preclude Williams from introducing evidence regarding a prior Section 1983 civil rights suit against Geraci, which also addressed a constitutional claim based on denial of medical care, related to the provision of hormone medication to a transgender inmate. *See Sunderland v. Geraci, et al.*, 13-cv-4838, Docket Sheet (E.D.N.Y.) (the "*Sunderland* Case"); Def. Ltr. Motion at 1. Defendants assert that in that case, the claim was tried and a jury returned a verdict against Geraci in favor of the plaintiff, which he disagrees with, as he maintains that he did not violate the plaintiff's rights. *See id.*

Defendants argue that evidence of the prior lawsuit should be inadmissible pursuant to Rule 404(b) because it would constitute propensity evidence and would only serve to prejudice the jury. *Id* at 2. Defendants further assert that under Rule 403, any probative value of the prior complaint would be substantially outweighed by the danger of unfair prejudice to Geraci. *Id.* Because evidence of this lawsuit is barred under Rule 403, the Court will not conduct a Rule 404(b) analysis.

### i.    *Legal Standards*

As set forth above, pursuant to Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  In examining prior lawsuits brought against defendants for relevance and analyzing them under the probative-prejudice balancing test, this question of admissibility "depends on the nature of the prior lawsuit, including whether the prior lawsuit is sufficiently related to the instant case, and the purpose for which such evidence will be used at trial." *Bermudez v. City of New York*, No. 15-cv-3240, 2019 WL 136633, at *7 (E.D.N.Y. Jan. 8, 2019).  Further, "[u]nrelated prior lawsuits are unlikely to yield evidence sufficiently probative to overcome the risk of unfair prejudice to defendants or confusing the issues for the jury," *id.* (citing *Nibbs v. Goulart*, 822 F.Supp.2d 339, 341 (S.D.N.Y. 2011)), but "evidence of factually similar lawsuits introduced for a permissible purpose under Rule 404(b) may be admitted." *Id.* (citing *Bourguignon v. Lantz*, No. 05-CV-0245, 2008 WL 4183439, at *1 (D. Conn. Sept. 10, 2008)).

### ii.   *Application*

At the outset, the Court notes that Defendants' letter motion does not point to any instance of Plaintiff seeking to admit evidence of the *Sunderland* Case.  The Court observes, however, that the Proposed Pretrial Order, which was approved for filing by the Honorable Arlene R. Lindsay on February 19, 2016, includes, as a

proposed exhibit for Plaintiff, "Cases related to Suffolk Jail." *See* Proposed Pretrial Order, 8. Further, in Plaintiff's 56.1 Counterstatement, Williams expresses his intention to cite to a federal lawsuit, and an attached newspaper article about the lawsuit, filed by a doctor named Patricia Dillon against Suffolk County concerning the practices of the medical unit at Suffolk County Jail. Pl.'s 56.1 Counterstmt., ¶ 41. Plaintiff, quoting from the article, asserts that the doctor "exposed practices that violate inmates' rights," that "serious injuries weren't treated," that inmates were "abused" and received "shoddy medical care," and that this is a common practice. *Id.* Plaintiff states that he plans to cite the federal lawsuit because in it Dillon says that the medical unit at Suffolk County Jail "has practiced deliberately indifferent actions and it is widespread." *Id.* In an exhibit to Plaintiff's Supplemental Rule 56.1 Counterstatement, DE [131-4], Williams includes a print-out of a ruling on a summary judgment motion which shows that Geraci was also a defendant in that matter. *See* DE [131-4]*,* 7-16; *Dillon v. Suffolk Cty. Dep't of Health Servs.*, 917 F. Supp. 2d 196 (E.D.N.Y. 2013). In that case, the plaintiff asserted a First Amendment retaliation claim and a claim pursuant to the New York State whistleblower statute against Defendants Suffolk County, Dr. Humayun Chaudhry, and Geraci based on, *inter alia*, her complaints about indifferent medical treatment to prisoners and possible prisoner abuse at Riverhead Correctional Facility in Suffolk County, New York. *See Dillon*, 917 F. Supp. 2d at 200. In relation to Geraci, she alleged that he told her patients were denied medical treatments and delayed in being started on medication when they arrived. *Id.* She also alleged other instances of inadequate

treatment at the jail. *See id.* at 200-201. The summary judgment motion was granted in part and denied in part. *Id.* at 217.

Based on Plaintiff's description of the case, it appears that he is attempting to enter it into evidence to show that deliberate indifference to medical needs is a common occurrence at the jail.[12]   Admitting this lawsuit into evidence would be unfairly prejudicial to Geraci, and thus, it will be excluded. *See Phillips v. City of New York,* 871 F. Supp. 2d 200, 203 n.2 (E.D.N.Y. 2012) (excluding, *inter alia,* federal civil rights lawsuits against the defendant officers in a § 1983 civil rights case to show evidence of "pattern and practice" conduct because the Court found "no 'unusual characteristics' or evidence of a 'unique scheme,'" and concluded that "any probative value of the complaints would be substantially outweighed by the danger of unfair prejudice to the Defendant Officers because the lawsuits [were] mere allegations . . .")

Further, as set forth above, Plaintiff makes no reference to the *Sunderland* Case against Geraci, and the Court sees no instances on the record of Williams expressing an intention to offer *Sunderland* into evidence for any articulated permissible purpose. Thus, the Court assumes that were Plaintiff to attempt to offer this suit into evidence, it would be to show that Geraci has a propensity for deliberate indifference to medical needs. Moreover, even if Plaintiff attempted to enter this

---

[12] In the Summary Judgment Memorandum and Order, the Court analyzed Plaintiff's submission of this case in the context of the issue of municipal liability, finding that the lawsuit "does not establish a municipal custom or policy." Summary Judgment Mem. & Order, 33. In its analysis, the Court notes that the allegations were disputed and predate Plaintiff's admission to the jail. *Id.* at 33-34.

lawsuit into evidence for an otherwise permissible purpose, any probative value would be outweighed by the potential for prejudice against Geraci in showing a recent claim brought against him for a similar violation. *See, e.g.*, *Iverson v. Surber*, 800 F. App'x 50, 52 (2d Cir. 2020) (in an excessive force case, finding it was not an abuse of discretion to exclude evidence that a defendant was previously sued for excessive force).

### iii.    *Conclusion*

Accordingly, Defendants' motion to preclude evidence of the *Sunderland* Case is granted.  Plaintiff is also barred from admitting the Memorandum and Order for *Dillon v. Suffolk Cty. Dep't of Health Servs.*, 917 F. Supp. 2d 196 (E.D.N.Y. 2013) and related newspaper article.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff's motions are granted in part and denied in part, and Defendants' motion is granted.

Plaintiff's motion that Defendants be precluded from offering into evidence or eliciting any testimony related to video footage from Riverhead Correctional Facility, and that an adverse inference instruction be given, is denied.  Further, Plaintiff's request to appear at trial in plain clothes and unshackled is granted, with the understanding that any concerns expressed by the US Marshal will be dealt with if and when they are raised.  Finally, Plaintiff's motion requesting that Defendants appear in traditional dress business clothing is granted.

The following evidence is barred at trial:  (1) the crimes Plaintiff was convicted of, the facts underlying the offenses, and the length of the sentence; (2) the fact that Williams entered jail with a gunshot wound; (3) Plaintiff's subsequent civil lawsuit to the extent it includes statements concerning his criminal history, *see Williams v. Hall et al.*, 16-cv-6830; (4) the *Sunderland* Case, and the Memorandum and Order for *Dillon v. Suffolk Cty. Dep't of Health Servs.*, 917 F. Supp. 2d 196 (E.D.N.Y. 2013) and related newspaper article; (5) Plaintiff's alleged use of prostitutes pre-incarceration; (6) Plaintiff's grievance and disciplinary history not directly related to his claims; and (7) that he was housed in the observation bay at Riverhead Correctional Facility due to gang affiliation.

The following evidence will be admitted at trial:  (1) the fact that Williams was convicted of four felonies, when he was convicted, the fact that he is currently incarcerated and serving a sentence for felonies punishable by a term of imprisonment of more than one year; (2) on cross-examination, Plaintiff's statements that another personality named Malik committed his crimes, and the fact that he did not mention another personality in the police interrogation following his arrest; and (3) Williams' mental health history regarding his schizophrenia diagnosis and statements regarding multiple personalities during the time period relevant to this litigation.

Dated: Central Islip, New York
     September 30, 2020

        s/ Steven I. Locke
       STEVEN I. LOCKE
       United States Magistrate Judge